UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

RACHEL JANE JOHNSON            Case No. 6:11-bk-17111-ABB
                               Chapter 13

　　　　Debtor.
_____/

RACHEL JANE JOHNSON            Adversary No. 6:13-ap-00089-ABB

　　　　Plaintiff,

vs.

NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2007-2,

　　　　Defendant.
_____/

## MEMORANDUM OPINION

This matter came before the Court on the Debtor's Complaint against National Collegiate Student Loan Trust (Adv. Pro. Doc. No. 1) seeking to discharge approximately $32,403.36 in student loan debt pursuant to 11 U.S.C. §523(a)(8). Judgment in favor of National Collegiate Student Loan Trust ("NCT") is due to be entered.

The Debtor, Rachel Jane Johnson, filed a Chapter 7 petition on November 14, 2011 (Case No. 6:11-bk-17111-ABB) which was converted to a Chapter 13 on April 26, 2012 (Doc. No. 23). The Debtor commenced the instant adversary proceeding on June 3, 2013 against eleven defendants including NCT. All defendants but for NCT have been

1

dismissed from this adversary proceeding or have had default judgments entered against them (Adv. Pro. Doc. Nos. 42, 53, 54).

The Debtor, her counsel, and counsel for NCT appeared at the final evidentiary hearing held on February 19, 2014. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing testimony and argument, and being otherwise fully advised in the premises.

### Findings of Fact

The Debtor is a highly educated, divorced forty-three year old mother of two daughters, ages 16 and 18, respectively (Doc. No. 1). The Debtor earned a Bachelor of Science degree in Secondary Education from the University of Missouri/Columbia in 1993 and a Master of Fine Arts degree from Murray State University in 2009 (Adv. Pro. Doc. No. 58).

It was near the time the Debtor completed her Master's degree that the Debtor was separated and divorced from her ex-spouse and decided to move from Missouri to Florida with her daughters. Both daughters had been dependents of the Debtor until the eldest daughter recently turned 18 and enrolled as a full-time college student. The younger daughter continues to live with the Debtor.

The Debtor was a stay-at-home mom prior to completing her Master's degree (Adv. Pro. Doc. No. 58). The Debtor began tutoring online and obtained employment as an adjunct professor at Eastern Florida State College ("EFSC") upon earning her Master's degree (Adv. Pro. Doc. No. 58). The Debtor has been able to obtain additional employment as an adjunct professor at the Florida Institute of Technology ("FIT") and at

the University of Missouri (Adv. Pro. Doc. No. 58). Although the Debtor had hoped to obtain and continues to search exclusively for a permanent teaching position at a post-secondary educational institution, she has only been able to find part-time and adjunct teaching jobs at the college and university level at this time.

The Debtor's annual income from her various positions fluctuates depending the number of course she teaches in a year, however, her annual income is relatively stable and far exceeds her annual income prior to obtaining her Master's degree (Plaintiff's Ex. No. 11). The Debtor earned an annual income of $26,039.00 in 2010; $34,691.00 when Debtor filed her Chapter 7 petition in 2011; $26,216.00 in 2012; and $26,883.90 in 2013 (Plaintiff's Ex. Nos. 12, 13, and 14; Adv. Pro. Doc. No. 58).

The Debtor's monthly income similarly fluctuates depending on the number of courses she is able to teach in a given semester. The Debtor's amended Schedule J indicates the Debtor's monthly income is $3,933.91 which includes $1,000.00 per month from the Debtor's ex-spouse for child support in accordance with the marital settlement agreement. The child support should have decreased to $800.00 per month once the eldest daughter turned eighteen and should terminate completely in 2017 when both daughters reach the age of majority. The Debtor's ex-spouse has continually paid $1,000.00 monthly (Adv. Pro. Doc. No. 58). A percentage of the child support payments are gratuitous and this contribution to the Debtor's monthly income will likely cease, however, so too will the Debtor's financial responsibilities for her daughters.

The Debtor's monthly expenses total $3,050.00 (Plaintiff's Ex. No. 7). These expenses include costs for food, entertainment, and personal items disproportionate to the

Debtor's need and income. Even allowing for all listed expenses the difference between monthly expenses and income leaves the Debtor with a net disposable income of more than $800.00 (Plaintiff's Ex. No. 7). The Debtor has income to repay her educational debt without threatening her ability to maintain a minimal standard of living for herself and dependent.

The Debtor is indebted to NCT arising out of a loan for the purpose of the Debtor to attend Murray State University to obtain her Master's degree (the "Loan"). The Loan is an educational loan as defined by 11 U.S.C. §523(a)(8). The Debtor had incurred upwards of $180,000.00 in student loan debt owed to a number of lending institutions prior to filing for Bankruptcy relief (Doc. No. 1). Only NCT's loan remains the subject of this adversary proceeding in the stipulated amount of $32,403.36 as of October 7, 2013 (Adv. Doc. No. 52).

The Loan was made on March 27, 2007 in the amount of $20,000.00 at an annual percentage rate of 12.188% (Plaintiff's Ex. No. 6). The Loan repayment terms provided for monthly payments of $307.82 for 240 months beginning on December 30, 2009 for a total repayment amount of $73,879.20 (Plaintiff's Ex. No. 6). The Debtor has not made a payment towards the principle or interest owed to NCT pursuant to the Loan Payment History Report (Plaintiff's Ex. No. 6) and the Debtor has not identified any additional circumstances that would prevent the Debtor from making payments now or in the future.

The Debtor's circumstances do not establish undue hardship under §523(a)(8) to obtain a discharge, partial or otherwise, of education loan debt.

## Conclusions of Law

A debtor is not entitled to a discharge of a student loan debt unless excepting such debt from discharge "...would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. Section 523(a)(8). The Eleventh Circuit Court of Appeals has adopted the "*Brunner* Test" to determine whether a student loan becomes dischargeable due to a borrower's undue hardship. *In re Cox*, 338 F.3d 1238, 1241 (11th Cir. 2003).

The three-prong *Brunner* Test requires the party seeking discharge of an education loan debt to demonstrate each prong by a preponderance of the evidence:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.

*Education Credit Mgmt. Corp. v. Mosley*, 494 F.3d 1320, 1324-25 (11th Cir. 2007) (quoting *Brunner v. New York State Higher Education Services Corp.* 831 F.2d 395, 396 (2d Cir. 1987)). "If one of the elements of the test is not proven, the inquiry ends, and the student loan cannot be discharged." *In re Russotto*, 370 B.R. 853, 856 (Bankr. S.D. Fla. 2007); *In re Southard*, 337 B.R. 416, 420 (Bankr. M.D. Fla. 2006). Bankruptcy Courts have equitable powers to create an equitable remedy under 11 U.S.C. § 105(a). *In re Cox*, 338 F.3d at 1243. "The specific language of §523(a)(8) does not allow relief to a debtor who has failed to show 'undue hardship,' the statute cannot be overruled by the general principles of equity contained in § 105(a)." *Id.*

The first prong of the *Brunner* Test requires a debtor to demonstrate excepting the student loan from discharge will prevent her from maintaining a minimal standard of living for herself and dependents. *In re Wolfe*, 501 B.R. 426, 435 (Bankr. M.D. Fla. 2013). A debtor is not required to live in poverty, but may not necessarily maintain her previous standard of living. *Credit Mgmt. Corp. v. Stanley*, 300 B.R. 813, 818 (N.D. Fla. 2003).

The Debtor's income and expenses illustrate an ability to maintain a minimal standard of living if forced to repay the Loan. The Debtor's net disposable monthly income is $883.91 and the monthly repayment amount is $307.82. There are ample funds for the Debtor to pay the Loan and maintain herself and her daughter. The Debtor's living expenses include high costs for vitamins, entertainment, and food for two people. The available disposable income is adequate for the Debtor to pay her Loan while maintaining a minimal standard of living even with all expenses listed as is.

The second prong of the *Brunner* Test requires a debtor to establish "an inability to pay that is likely to continue for a significant time," *In re Cox*, 338 F.3d at 1242, and focuses on "the present existence of circumstances—circumstances *in addition* to a present lack of ability to pay—that strongly suggest an inability to pay the loan over an extended period of time…" *In re Ulm*, 304 B.R. 915, 921 (S.D. Ga. 2004). The Debtor has not identified any additional circumstances which indicate a current inability to pay the Loan or that would lead to an inability to pay in the future. It is probable the Debtor will be able to repay the Loan given the Debtor's history of academic success and ability to obtain gainful employment.

Satisfaction of the third prong of the *Brunner Test* requires "a showing that the debtor made efforts to satisfy the debts by all means—or at least be some means—within the debtor's reasonable control." *In re Douglas*, 366 B.R. 241, 259 (Bankr. M.D. Ga. 2007)(*citing In re Ulm*, 305 B.R. at 922). The Debtor has not made any payment towards the principle or interest owed to NCT pursuant to the Loan Payment History Report (Plaintiff's Ex. No. 6).

Actual payments are not required to prove good faith, rather a debtor is tasked with establishing "that either a good faith effort was undertaken to repay the student loans or that the forces preventing repayment were truly beyond his or her reasonable control." *In re McGinnis*, 289 B.R. 257, 267 (Bankr. M.D. Ga. 2003). The Debtor testified she had attempted to call NCT to negotiate the payment terms of the Loan, did successfully defer the Loan for a time, but never made any offer of repayment. These efforts do not constitute a good faith attempt to repay where the Debtor had the income to make payments.

The Debtor has not established by a preponderance of the evidence it would be an undue hardship if she were forced to repay the Loan in full pursuant to Section 523(a)(8) of the Bankruptcy Code.

Accordingly it is

**ORDERED, ADJUDGED, and DECREED** that the relief sought in the Debtor's Complaint against National Collegiate Student Loan Trust (Adv. Pro. Doc. No. 1) is hereby **DENIED**; and it is

**ORDERED, ADJUDGED, and DECREED** that the indebtedness owed to National Collegiate Student Loan Trust is hereby **NONDISCHARGEABLE**.

Dated this 2nd day of April, 2014.

_____
ARTHUR B. BRISKMAN
United States Bankruptcy Judge